FILED

2011 May-27  PM 05:26
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| STACY WORD | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. |
| | )    2:10-cv-01149-AKK |
| BELLSOUTH TELECOMMUNICATIONS , | ) |
| INC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

### DEFENDANT'S BRIEF IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

Defendant BellSouth Telecommunications, Inc. (hereafter "Defendant" or "BST"), through counsel and pursuant to Appendix II of the Scheduling Order (Dkt. 20) entered in this case, submits this Brief in Support of Defendant's Motion for Summary Judgment.

924029

# **TABLE OF CONTENTS**

**PAGE**

I.    NATURE OF THE MATTER BEFORE THE COURT.................................1

II.   STATEMENT OF UNDISPUTED RELEVANT
MATERIAL FACTS ....................................................................................2

III.  ARGUMENT AND CITATIONS OF AUTHORITY ...................................12

      A.    This Case Is Appropriate For Resolution Under
The Standards Of Rule 56(c)............................................................12

      B.    Defendant Is Entitled To Summary Judgment
On Plaintiff's Retaliation Claim (Count I)..........................................13

      C.    Defendant Is Entitled To Summary Judgment
On Plaintiff's Claim For Race/Color Discrimination
Under Title VII And 42 U.S.C. § 1981 (Count II).............................16

      D.    Defendant Had Legitimate, Non-discriminatory
Reasons For Terminating Plaintiff's Employment .............................21

      E.    Plaintiff Cannot Show Pretext..........................................................22

      F.    Defendant Is Entitled To Summary Judgment
On Plaintiff's FMLA Interference Claim (Count III) .........................23

      G.    Defendant Is Entitled To Summary Judgment
On Plaintiff's FMLA Retaliation Claim (Count IV)...........................25

      H.    Defendant Is Entitled To Summary Judgment
On Plaintiff's Claim Under The Americans With
Disabilities Act (Count V)................................................................26

IV.  CONCLUSION.............................................................................................31

## I.     NATURE OF THE MATTER BEFORE THE COURT

Defendant BST provides telecommunications products and services to businesses and residences in nine southeastern states.  In order to efficiently and effectively provide such services, BST needs all employees to perform their assigned tasks.  Throughout her employment, Plaintiff Stacy Word ("Plaintiff" or "Word") had unsatisfactory attendance.  In 2007, Word received a formal counseling entry and a formal warning entry for unsatisfactory attendance.  A letter-in-lieu of suspension was issued in June of 2008 for unsatisfactory attendance.  After four more unexcused absences, Word's employment was terminated on December 9, 2008.  Word was returned to work on June 29, 2009 after a grievance settlement was reached between BST and the Union which represented Word.  Pursuant to the settlement, the termination was reduced to a 30-day suspension.  Barely one month after her return to work, Word missed five consecutive full days of work for personal reasons.  As a result, Word's employment was terminated for a second time for unsatisfactory attendance on August 12, 2009.

On June 21, 2010, Word filed a Second Amended Complaint against Defendant which contains five Counts.  (Dkt. 6).  Count I alleges retaliation in violation of Title VII and 42 U.S.C. § 1981a and 42 U.S.C. § 1981.  Count II alleges race/color discrimination in violation of Title VII and 42 U.S.C. § 1981a

and 42 U.S.C. § 1981.  Count III alleges both interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.  Count IV alleges retaliation in violation of the FMLA, and Count V alleges discrimination and refusal to accommodate under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

Defendant filed an Answer to Plaintiff's Second Amended Complaint on September 1, 2010.  (Dkt. 13).  In the Answer, Defendant denied that any discriminatory or retaliatory conduct occurred with respect to Plaintiff's employment and raised Affirmative Defenses to Plaintiff's claims.  The discovery period has ended, and the matter is now before the Court on Defendant's Motion for Summary Judgment.

## II.    STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS

1.     Word began work at BST on July 8, 2002 as a Collections Representative (residential) at the Alabama Operations Center (AOC) in Birmingham.  (Word Depo., Ex. A, p. 27 at lines 16 - 25, and p. 28 at lines 1 and 2).

2.     On June 30, 2004, Word was surplused from the collections job. (Word Depo., Ex. A, p. 28 at lines 3 - 5).

3.     Word came back to BST in a Small Business collections position in Huntsville, Alabama.  (Word Depo., Ex. A, p. 29 at lines 15 - 25).

4.     After approximately nine months, Word accepted a sales position in Birmingham with BST.  (Word Depo., Ex. A, p. 30 at lines 9 - 13).

5.     Word began working in the sales position on April 24, 2006.  (Word Depo., Ex. A, p. 31 at lines 2 - 5).

6.     As a Sales Associate in the Consumer organization, Word's duties and responsibilities were to handle the requests that the customer called in for and to sell other services and products to the customer.  (Word Depo., Ex. A, p. 32 at lines 1 - 5).

7.     At all relevant times, attendance issues for BST employees were covered by the "AT&T Southeast Attendance and Punctuality Guidelines." (Wadley Decl., Ex. D, and Ex. E).

8.     The Guidelines state:

> AT&T Southeast is engaged in businesses which necessitate that it supply dependable, reliable services to its clients and customers twenty-four hours a day, seven days a week.  The Company needs all employees performing their assigned tasks, regardless of department, to efficiently and effectively provide such services.  When anyone is absent, regardless of cause, it weakens the Company's ability to provide service.  Promoting good attendance and controlling excessive absenteeism is an integral part of every manager's job and is fundamental to any of the other objectives for employees.

(Wadley Decl., Ex. D, at Ex. E at p. 1, BST 921).

9.     BST's "Policy on Attendance" states as follows:

> AT&T Southeast has no program for planned  absences and does not have a certain number of days set aside for each employee as sick days.  The Company expects employees to be at work every scheduled day.  Good attendance is a job requirement employees are expected to meet just as they meet other job requirements.

(Wadley Decl., Ex. D, at Ex. E at p. 1, BST 921).

10.     The Guidelines further state:

> It has long been the policy of our Company that absenteeism problems are to be dealt with on an individual employee basis and that no rigid standards or criteria should be established to define how much absence is excessive or what fixed number of absences within a given period would result in some form of disciplinary action.

(Wadley Decl., Ex. D, at Ex. E at p. 2, BST 922).

11.     The Guidelines provide:

> When an employee misses any portion of work time for any reason on a scheduled day, the appropriate code and associated Absence Reason Code when required should be reported in eLink.

(Wadley Decl., Ex. D, at Ex. E at p. 7, BST 927).

12.     One of the codes used, the "H" code, covers "Home Conditions" which applies to absences "due to personal reasons (other than the employee's own illness) or home conditions.  (Wadley Decl., Ex. D, at Ex. E at pp. 16 - 17, BST 936 - 937).

13.     The "Home Conditions" code is a "summarized" absence and, therefore, counts against an employee's attendance record.  (Wadley Decl., Ex. D, at Ex. E at p. 30, BST 950).

14.     The Guidelines provide a table for various types of miscellaneous absence coding including the "H" or "Home Conditions" code.  (Wadley Decl., Ex. D, at Ex. E at p. 27, BST 947).

15.     The Attendance and Punctuality Guidelines make clear that:  "FMLA approved absences are not summarized."  (Wadley Decl., Ex. D, at Ex. E at p. 30, BST 950).

16.     When attendance problems arise, supervisors are instructed to employ five steps of discipline including:  Informal Discussion, Counseling, Warning, Suspension (letter in lieu of), and Discharge.  (Wadley Decl., Ex. D, and Ex. E at pp. 37 - 42, BST 957 - 962).

17.     During her tenure at BST, Word was disciplined for unsatisfactory attendance.  (Word Depo., Ex. A, p. 33 at lines 21- 23).

18.     When Word was in Collections, a supervisor named Daryl Billups or Billingsly gave her a Counseling entry on January 28, 2003 for unsatisfactory attendance.  (Word Depo. , Ex. A, at Ex. 1 and pp. 35 at lines 1 - 25).

19.     Word was given a second Counseling entry on August 21, 2003 by Pat LeBlanc for unsatisfactory attendance.  (Word Depo., Ex. A, at Ex. 2).

20.     On July 17, 2007, Word was given a Counseling entry by a supervisor named Daryl Renolds.  (Word Depo., Ex. A, at Ex. 3 and p. 40 at lines 1 - 6).

21.     On September 18, 2007, Word was given a Warning entry for unsatisfactory attendance by Steve Thomas.  (Word Depo., Ex. A, at Ex. 4 and p. 41 at lines 1 - 15).

22.     Steve Thomas is an African-American male.  (Coleman Depo., Ex. C at p. 17 at line 23 and p. 18 at line 1).

23.     At some point, Cureaka Coleman, an African-American female, became Word's supervisor.  (Word Depo., Ex. A, p. 42 at lines 14 - 17 and p. 43 at lines 13 - 14).

24.     On June 23, 2008, Ms. Coleman issued Word a Letter-in-Lieu of Suspension for unsatisfactory attendance.  (Word Depo., Ex. A, p. 43 at lines 19 - 22  and p. 44 at lines 1 - 4 and Ex. 6).

25.     Word filed a grievance over the Letter-in-Lieu of Suspension of June 23, 2008.  (Word Depo., Ex. A, p. 47 at lines 18 - 21).

26.     During the grievance process, Cureaka Coleman agreed to remove the Letter-in-Lieu of Suspension within six months if satisfactory attendance was maintained.  (Word Depo., Ex. A, p. 48 at lines 22 - 25 and p. 48 at lines 1 - 6).

27.     At some point, Word found it necessary to miss work to attend court dates with her son.  (Word Depo., Ex. A, p. 49 at lines 15 - 18).

28.     Word was not receiving a subpoena for these court dates.  (Word Depo., Ex. A, p. 53 at lines 12 - 13).

29.     On December 9, 2008, Word's employment was terminated by Cureaka Coleman for unsatisfactory attendance.  (Word Depo., Ex. A, p. 60 at lines 1-  9 and Ex. 7).

30.     Word filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") after her termination in December of 2008.  (Word Depo., Ex. A, p. 63 at lines 20 – 23 and Ex. 8).

31.     The Charge of Discrimination was filed on June 4, 2009 and is the only Charge of Discrimination that Word has filed.  (Word Depo., Ex. A, p. 68 at lines 13 - 19).

32.     Word received a "Dismissal and Notice of Rights" from the EEOC.  (Word Depo., Ex. A, p. 93 at lines 1 - 5 and Ex. 9).

33.     The Dismissal and Notice of Rights indicates that the EEOC concluded:  "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  (Word Depo., Ex. A, at Ex. 9).

34.     Word had also filed a grievance regarding her termination of December 9, 2008 that is documented on a "Record of Grievance" form.  (Word Depo., Ex. A, at Ex. 10).

35.     On June 22, 2009, Communications Workers of America ("CWA")
State Representative M. M. Smith and BST Labor Relations Manager MaryFran
Tully reached a grievance settlement.  (Tully Decl., Ex. G, at ¶ 19 and Word
Depo., Ex. A, p. 95 at lines 12 - 25 and p. 96 at lines 1 - 25).  The terms of the
grievance settlement are as follows:

> Company agrees without prejudice or precedent to either party to
> change termination to a 30 day suspension entry, remove the
> suspension in lieu letter dated 06-23-2008, (see page 2, change coding
> from "H" to "excused unpaid" for time out on 11/19/08 & 12/08/08.
> Company additionally agrees without prejudice or precedent to
> provide grievant with refresher training upon return with a return date
> of 06-29-09 and pay 3 days pay less applicable taxes, etc.

(Word Depo., Ex. A, at Ex. 10).

36.     On June 26, 2009, CWA State Representative M. M. Smith sent a
letter to Word which contained the exact terms of the grievance settlement.  (Tully
Decl., Ex. G, at ¶ 23 and Ex. C).

37.     Word was told to report back to work to Cheryl Holmes on Monday,
June 29, 2009.  (Word Depo., Ex. A, p. 98 at lines 20 - 23).

38.     Word also had a telephone conversation with M. M. Smith regarding
the terms of the settlement.  (Word Depo., Ex. A, pp. 98 - 102).

39.     Word asked Mr. Smith:

> if he would ask the company if I could come back at a
> later date because I knew August the 3rd through the 7th,
> there was something that I had to do that could not be
> changed.  He said, Stacy, I can ask, but it's going to look

> bad.  You've been off work for this much of time.  The
> company is giving you your job back.  Why don't you
> just go back to work, use vacation days, and things like
> that.  And I said, you're right, I really need the money.  I
> can use my vacation days.  And that was the agreement
> that Mr. Smith and I spoke about.

(Word Depo., Ex. A, p. 101 at lines 6 - 19).

40.     As part of the grievance settlement, the Company did not require

Word to sign a release of all claims.  (Word Depo., Ex. A, p. 104 at lines 12 - 15).

41.     When Word returned to work, she was put in a training class led by

Todd Cantrell.  (Word Depo., Ex. A, p. 117 at line 1 through p. 118, line 22).

42.     After the training class was finished, Steve Wadley assigned Word to

an Acting Supervisor.  (Word Depo., Ex. A, p. 120 at lines 12 - 16).

43.     The Acting Supervisor was Lee Howard.  (Coleman Depo., Ex. C,

p. 73).

44.     Word contends that before August 3 came around, she "made several

requests" for vacation.  (Word Depo., Ex. A, p. 124 at lines 2 - 4).

45.     Word did not fill out the form that is required to request vacation.

(Word Depo., Ex. A, p. 124 at lines 5 - 7).

46.     No vacation was available for the week of August 3 - 7, 2009 because

other employees had requested it and been denied.  (Wadley Decl., Ex. D, at ¶ 56).

47.     Each day from Monday, August 3, through Friday, August 7, Word called in and told the supervisor who answered the phone that she was out for personal reasons.  (Word Depo., Ex. A, p. 127 at lines 1 - 8).

48.     On Tuesday, August 4, 2009, Steve Wadley sent an e-mail to CWA Representative Ronald Reese which stated:  "We could not have met today concerning her training because today is the 2nd day she has reported out.  Any assistance you can provide in reinforcing the need for her to improve her attendance to a satisfactory level would be appreciated."  (Wadley Decl., Ex. D, at ¶ 50 and Ex. G).

49.     On the Wednesday or Thursday of the week of August 3, M. M. Smith called Word and "he says what's wrong."  (Word Depo., Ex. A, p. 123 at lines 1 - 2).

50.     M. M. Smith said to Word, "Steve is calling around, he's going to fire you.  What are you doing?"  (Word Depo., Ex. A, p. 123 at lines 3 - 4).

51.     On Thursday, August 6, 2009, Steve Wadley had a conversation with Ronald Reese about Word's continuing absence.  (Wadley Decl., Ex. D, at ¶ 51).

52.     On Saturday, August 8, 2009, Wadley sent an e-mail to Ronald Reese which stated, "When I talked to you Thursday I advised you I did not plan to terminate Stacey upon her return.  Since she called out again Friday the discipline decision is being reviewed."  (Wadley Decl., Ex. D, at ¶ 52 and Ex. H).

53.     Wadley contacted Human Resources, Labor Relations, and his immediate supervisor regarding Word's situation and received concurrence that he could terminate Word's employment for unsatisfactory attendance since she had been at a suspension level of discipline and then had five full work days of absence for personal reasons.  (Wadley Decl., Ex. D, at ¶ 19).

54.     Wadley was concerned that if he did not move to the next step of discipline for Word, it would set a precedent that the Union could later argue with respect to other employees who were disciplined for attendance.  (Wadley Depo., Ex. A, p. 170 at lines 2 - 5).

55.     On August 12, 2009, Word was terminated by Jason Glover for unsatisfactory attendance.  (Word Depo., Ex. A, p. 130 at lines 2 - 10 and p. 131 at lines 2 - 5).

56.     Word filed a grievance over her second termination of August 12, 2009.  (Word Depo., Ex. A, p. 131 at lines 6 - 8).

57.     Word's Union, the CWA, refused to take her second termination grievance to arbitration.  (Tully Decl., Ex. G, at ¶ 26 and Ex. D).

58.     On May 20, 2011, the CWA and BST memorialized the final resolution of the grievance over Word's second termination.  (Tully Decl., Ex. G, at ¶¶ 26 - 27 and Ex. E).

59.     After her second termination, Word did not go back to the EEOC and file another Charge of Discrimination.  (Word Depo., Ex. A, p. 138 at lines 6 - 10).

60.     After Word had gotten her job back through the Union and Company negotiations, she did not inform the EEOC that she had been reemployed.  (Word Depo., Ex. A, p. 139 at lines 8 - 12).

## III.   ARGUMENT AND CITATIONS OF AUTHORITY

A.     This Case Is Appropriate For Resolution Under The Standards Of Rule 56(c).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, affidavits and other evidence adduced show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the first of the United States Supreme Court's "summary judgment trilogy," the Court reaffirmed the importance and utility of Rule 56:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action," . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

924029

(*quoting* Fed. R. Civ. P. 1) (citations omitted).

The substantive law determines which facts are material in deciding whether summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In the Anderson case, the Supreme Court further stated that a defendant is entitled to summary judgment if reasonable jurors could not hold for the plaintiff.  The Court held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . .

Anderson, 477 U.S. at 252, 106 S. Ct. at 2512, 91 L. Ed. 2d at 214.

A review of the undisputed material facts of this case in light of the controlling legal authority demonstrates that summary judgment should be granted in favor of Defendant on all claims brought by Plaintiff.

> B.    Defendant Is Entitled To Summary Judgment On Plaintiff's Retaliation Claim (Count I).

Word contends that:  " In retaliation for Plaintiff filing an EEOC Charge, Defendant terminated her on August 12, 2009."  (Complaint, ¶ 21).  Title VII prohibits retaliation in employment:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In this case, Plaintiff has no direct evidence that any action taken by BST was motivated by a desire to retaliate.  In the absence of direct evidence of an intent to retaliate, a plaintiff may prove her case through circumstantial evidence, using the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under the burden-shifting framework, a plaintiff must first establish a prima facie case of retaliation.  <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001).

The three elements of a prima facie case of retaliation are as follows:  (1) the plaintiff engaged in statutorily protected conduct; (2) the plaintiff suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.  <u>Williams v. Motorola, Inc.</u>, 303 F.3d 1284, 1291 (11th Cir. 2002).  If the plaintiff is able to establish a prima facie case, the defendant has an opportunity to come forward with legitimate, non-retaliatory reasons for the challenged employment action.  <u>Pennington</u>, 261 F.3d at 1266.  "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff."  <u>Id.</u>

In this case, it is undisputed that Word engaged in statutorily protected conduct when she filed an EEOC Charge and that she later suffered an adverse employment action by virtue of the termination of her employment on August 12, 2009. Word cannot show, however, that the termination was causally related to the protected activity. The record reflects that between the filing of Word's EEOC Charge on June 4, 2009 and her termination on August 12, 2009, she missed five full days of work for personal reasons. Word had been reinstated to employment on June 29, 2009 and was at a Suspension level in the steps of progressive discipline. Those five days (37.5 hours) of unexcused absences were more than enough to justify the activation of the next step in the progressive discipline chain: termination.

Word cannot show that the reason for her termination was a pretext for prohibited, retaliatory conduct. The Eleventh Circuit has stated as to pretext, "a court should not 'second-guess the business judgment of employers'; in other words, 'a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). To establish pretext, the plaintiff must meet the employer's reason 'head on and rebut it.'" Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).

Word's retaliation claim must fail because BST has offered legitimate and non-retaliatory reasons for its employment action.  Word was absent from work for five full days from August 3, 2009 through August 7, 2009.  At the time, Word had an active suspension in her file for unsatisfactory attendance.  Such behavior would motivate a reasonable employer to take disciplinary action as BST did in this case.

C.    Defendant Is Entitled To Summary Judgment On Plaintiff's Claim For Race/Color Discrimination Under Title VII And 42 U.S.C. § 1981 (Count II).[1]

Title VII states that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ."  42 U.S.C. § 2000e-2(a)(1).  In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).  A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination.  In this case, Plaintiff has

---

[1]    A Title VII claim and a claim under 42 U.S.C. § 1981 "have the same requirements of proof and use the same analytical framework."  Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Accordingly, BST will address Word's Title VII claim with the understanding that the same analysis applies to Word's § 1981 claim.

failed to point to any direct evidence of discrimination on the part of the Defendant.

To evaluate Title VII claims based on circumstantial evidence, courts use the familiar framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and <u>Texas Dep't of Community Affairs</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).   Under such framework, the plaintiff must first establish a prima facie case of discrimination by showing that "(1) she belongs to a [protected class]; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job."  <u>Knight v. Baptist Hospital of Miami</u>, 330 F.3d 1313, 1316 (11th Cir. 2003).

Defendant acknowledges that Plaintiff, an African-American, belongs to a protected class; that she was qualified, by education and training, to perform her job as a Sales Associate and that she was subjected to adverse job action when she was twice terminated from her employment.  However, Plaintiff cannot satisfy the third element of a prima facie case because she has failed to identify any similarly-situated employees outside of her classification who were treated more favorably by Defendant.

In order to prove the third element, "the plaintiff must show that the 'employees are similarly-situated in all relevant respects . . .'"  <u>Knight</u>, 330 F.3d at

1316, *quoting* Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  As part of this required showing, "this Court has consistently held that a plaintiff discharged for misconduct [must prove] 'that the misconduct for which she was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'"  Williams v. Motorola, Inc., 303 F.3d 1284, 1293 (11th Cir. 2002), *quoting* Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984).

Plaintiff contends that Joshua Heintz and Jordan Means, both white males in Steve Wadley's organization, were engaged in misconduct similar to hers and were treated more favorably because they were rehired more quickly than she was rehired.  (Word Depo., Ex. A, p. 69 at lines 4 - 18).  Both Heintz and Means were terminated by the Company for unsatisfactory attendance, and both were brought back to work.  BST denies that these two employees could be considered "similarly situated" to Word because their situations were different than Word's. Heintz was brought back because the Union quickly pointed out that a predicate Counseling entry should have been removed before a Warning entry was given to Heintz and, thus, Heintz had not received the proper application of progressive discipline.  (Wadley Decl., Ex. D, at ¶ 59).  Means was brought back because Marion J. Murphy had not been fully informed of the underlying reason for the last absence before Means' termination – the death of a fiancée/girlfriend.  (Murphy

Decl., Ex. F, at ¶¶ 29 - 36).  Neither of these factors was present in Word's two terminations for unsatisfactory attendance.

Word also complains that two African-American employees, of light complexion, were treated more favorably because they had been rehired after having been previously discharged.  (EEOC Charge, Dkt. 1 at p. 10).  Since that allegation was made, Word was also rehired by BST.  The two "light-complexioned" African-American employees, Valerie Hill and Damyon Fikes, did not have comparable attendance and punctuality records to Word's.  Ms. Hill and Mr. Fikes both had excessive tardies, and their total time away from work was much less than the total work time which Word missed.  (Wadley Decl., Ex. D, at ¶¶ 61 - 62).  Furthermore, other employees, both Caucasian and African-American, were terminated from employment for unsatisfactory attendance and not brought back to work.  (Wadley Decl., Ex. D, ¶ 63).

The Eleventh Circuit has held that "employees are similarly situated when they are accused of the same or similar conduct."  Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).  The conduct must be nearly identical "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Id. (citations omitted) (holding that although two employees had arrests for assaulting a child, they were not similarly situated because one had three additional arrests for violent assaults).  See also Howard v.

Oregon Television, Inc., 276 Fed. Appx. 940, 2008 U.S. App. LEXIS 11071

(May 6, 2008).

In Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir.

2006), it was held that "a plaintiff is similarly situated to another employee only if

the 'quantity and quality of the comparators' misconduct are nearly identical.'"

In Knight v. Baptist Hosp. of Miami, 330 F.3d 1313, 1319 (11th Cir. 2003),

the court affirmed a grant of summary judgment against the plaintiff by finding

that the proffered comparator was not similarly situated.  It was noted that while

both employees displayed similar "histories of problems with co-workers," the

comparator's record was "substantially better" than the plaintiff's regarding the

areas of "job performance and tardiness."  The court noted that even though the

comparator also experienced difficulties in terms of job performance and tardiness,

the plaintiff's "documented performance and tardiness problems" were

substantially worse in "both number and nature."  Id. At 1317-1319.  See also

Johnson v. Miller Brewing Co., 2009 U.S. App. LEXIS 13226, 106 Fair Empl.

Prac. Cas. (BNA) 1145 (11th Cir. 2009).  See also Maniccia v. Brown, 171 F.3d

1364, 1368 (11th Cir. 1999) ("We require that the quantity and the quality of the

comparator's misconduct be nearly identical").

"If Plaintiff fails to identify similarly-situated, non-minority employees who

are treated more favorably, [his] case must fail because the burden is on [him] to

establish [his] prima facie case." Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306, 1311 (11th Cir. 1998).  Because Plaintiff has failed to identify a similarly-situated comparator who engaged in nearly identical misconduct, summary judgment is appropriate.

> D.   BST Had Legitimate, Non-discriminatory Reasons For Terminating Plaintiff's Employment.

Even if Plaintiff is able to establish a prima facie case, BST is entitled to summary judgment because it had a legitimate and non-discriminatory reason for twice terminating Plaintiff's employment.  In Gaston v. Home Depot USA, Inc., 129 F. Supp. 2d 1355, 1367-68 (S.D. Fla. 2001), aff'd, 265 F.3d 1066 (11th Cir. 2001), the court addressed this part of an employment discrimination case:

> If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  See Weaver v. Gallardo, 922 F.2d 1515, 1521. The defendant only has to produce, not prove, the non-discriminatory reason, and the burden is thus "exceedingly light."  Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir. 1983).  Once defendant articulates legitimate, nondiscriminatory reasons, plaintiff must then prove that defendant's proffered explanation is a pretext for unlawful discrimination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Plaintiff's mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment.  Coutu v. Martin Cty. Bd. of Cty. Comm'rs, 47 F.3d 1068, 1073-74 (11th Cir. 1995).

BST terminated Word on two occasions because she had unsatisfactory attendance.

E.     <u>Plaintiff Cannot Show Pretext</u>.

Where, as here, the Plaintiff has "failed to present a prima facie case of discrimination [the Court] need not examine Defendant's articulated reasons for discharging [him], nor determine whether those reasons were merely a pretext for discrimination." <u>Hawkins v. Ceco Corp.</u>, 883 F.2d 977, 985 (11th Cir. 1989). Nonetheless, Defendant has articulated such a reason and offered overwhelming evidence that Plaintiff was separated solely because she had unsatisfactory attendance, not for any reasons related to her race/color.

With respect to Plaintiff's burden on the issue of pretext, the Court in <u>Gaston v. Home Depot USA, Inc.</u> stated:

> Once the Defendant proffers a legitimate, nondiscriminatory justification for the Plaintiff's employment termination, the presumption of discrimination is eliminated and the burden shifts to the plaintiff to produce evidence sufficient for a reasonable factfinder to conclude that the employer's reasons are pretext for discrimination and that the employer thus had a discriminatory intent. <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). In other words, the plaintiff must show that "a discriminatory reason more likely than not motivated [the employer] to [terminate him]." <u>Burdine</u>, 450 U.S. at 256, 101 S.Ct. at 1095. Such proof may be direct or circumstantial. <u>Smith v. Horner</u>, 839 F.2d 1530, 1536 (11th Cir. 1988). In examining the employer's proffered reasons, the court does not sit as a super-personnel department, and must accept the employer's stated reasons as given. As stated by the Eleventh Circuit recently, "provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. <u>Chapman</u>, 229 F.3d at 1030.

<u>Gaston</u>, 129 F. Supp. 2d at 1373.

The Plaintiff in this case cannot meet her burden.  Although it is obvious that Word disagrees with the decision made with respect to her employment, a reasonable factfinder could not find, based on the record in this case, that the reasons proffered by BST are pretextual and that race or color discrimination was the underlying motivation.

F.  <u>Defendant Is Entitled To Summary Judgment On Plaintiff's FMLA Interference Claim (Count III)</u>.

The Family and Medical Leave Act provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

. . .

(D)  Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).

Case law under the FMLA has created two types of claims:

**interference** claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, <u>see</u> 29 U.S.C. § 2615(a)(1), and **retaliation** claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, <u>see</u> 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

Strickland v. Water Works and Sewer Board of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).

To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.  Strickland, 239 F.3d at 1206-1207, *citing* O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353-52 (11th Cir. 2000); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999).

In this case, Plaintiff has no interference claim since there is absolutely no evidence that she was ever denied an FMLA-approved absence to which she was entitled.  It is undisputed that Word applied for FMLA leave on several occasions and was granted such leave when she provided appropriate medical documentation. There is no evidence that Word had applied for any FMLA leave after her return to work on June 29, 2009.

BST had sufficient grounds for terminating Word's employment regardless of whether she had ever applied for, or used, FMLA leave.  In Gamba v. City of Sunrise, 157 Fed. Appx. 112, 113 (11th Cir. 2005), the Eleventh Circuit stated:

> The Family and Medical Leave Act of 1993 does not insulate an employee who has requested medical leave from being terminated for poor performance.  So long as the employer would have taken the same action it did regardless of the request for leave, there is no statutory violation.

*Citing* Strickland, 239 F.3d at 1199.

Other courts have reached a similar conclusion with respect to unsatisfactory attendance.  In <u>Estrada v. Cypress Semiconductor, Inc.</u>, 616 F.3d 866, 871 (8th Cir. 2010), the Court held:

> An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave.  Because an employee "cannot claim protection from the FMLA for disciplinary action . . . as a result of absences that are not attributable to her serious health conditions, sufficient unexcused absences may justify her discharge under an employer's attendance policy."  (Citations omitted).  Therefore, an employer who "interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."

G.   <u>Defendant Is Entitled To Summary Judgment On Plaintiff's FMLA Retaliation Claim (Count IV).</u>

To succeed on a retaliation claim under the FMLA, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.  <u>Strickland</u>, 239 F.3d at 1207, *citing* <u>King</u>, 166 F.3d at 891.  As stated in <u>Strickland</u>:

> In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus."

<u>Strickland</u>, 239 F.3d at 1207.

The Eleventh Circuit held in <u>Strickland</u>:

> When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of employer's intent, we apply the same burden-shifting framework established by the Supreme Court in

924029                                    - 25 -

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating Title VII discrimination claims. <u>See</u> <u>Brungart v. BellSouth Telecomm., Inc.</u>, 231 F.3d 791, 798 (11th Cir. 2000).  In order to state a claim of retaliation, an employee must allege that:  (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  <u>Parris v. Miami Herald Publ'g Co.</u>, 216 F.3d 1298, 1301 (11th Cir. 2000).

BellSouth admits that Plaintiff used FMLA leave and suffered an adverse employment action when she was terminated on two occasions.  However, Plaintiff cannot meet the third element of a retaliation claim because she cannot show that the termination of her employment was causally related to any protected activity. The record in this case shows that Plaintiff was terminated for unsatisfactory attendance.  BellSouth had a legitimate and non-retaliatory reason for terminating Plaintiff's employment, which Plaintiff cannot demonstrate is a pretext for FMLA retaliation.

       H.      <u>Defendant Is Entitled To Summary Judgment On Plaintiff's Claim Under The Americans With Disabilities Act</u>.

The Complaint alleges that Word "is a person with a disability, is perceived as disabled and has a record of a disability."  (Second Amended Complaint, ¶ 47). It is further alleged that "Defendant discriminated against the Plaintiff, a qualified individual, by refusing to accommodate her and discharging her."  (Second Amended Complaint, ¶ 48).

The ADA provides:

> No covered entity shall discriminate against a qualified individual
> with a disability because of the disability of such individual in regard
> to job application procedures, the hiring, advancement, or discharge of
> employees, employee compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a).

In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that 1) she has a disability; 2) she is a qualified individual; and 3) she was subjected to an adverse employment action because of her disability.  Doe v. DeKalb County School Dist., 145 F.3d 1441, 1445 (11th Cir. 1998).  In this case, Plaintiff cannot establish a prima facie case.

For purposes of the ADA, a "disability" is defined as:

> (A)   a physical or mental impairment that substantially limits one or
>        more of the major life activities of such individual;
> (B)   a record of such an impairment; or
> (C)   being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Defendant is entitled to summary judgment because there is no genuine issue of material fact with regard to whether Plaintiff was "substantially limited" in one or more major life activities.  In Sutton v. United Airlines, Inc., 527 U.S. _____, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), the United States Supreme Court stated that,  "The ADA does not define "substantially limits," but "substantially" suggests "considerable" or "specified to a large degree."  144 L. Ed. 2d at 468.  The EEOC regulations which interpret the term "substantially limits" define the term to mean

"unable to perform" or "significantly restricted."  <u>Sutton</u>, 144 L. Ed. 2d at 468,

*citing* 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1998).

During her deposition, Word identified her disability as "stress, anxiety and

depression."  (Word Depo., Ex. A, p. 77 at lines 6 - 8).  The individuals who

treated these conditions were a counselor, Karen Bluestein, and a psychiatrist, Dr.

Daw.  (Word Depo., Ex. A, p. 78 at lines 7 - 25).  The only medical records

produced by Word in this case consist of nine pages of handwritten notes, marked

by Defendant's counsel as P0220 through P0228.  (Word's Medical Records, Ex.

K).  The notes do not indicate that Word was "unable to perform" or "significantly

restricted" in any major life activity.  The primary focus of the notes is the

increased stress Word was experiencing from her supervisor at work.

In response to an interrogatory served by Defendant, Word indicated that the

only accommodation she requested was to "transfer to a less hostile team."

(Plaintiff's Response to Defendant's First Interrogatories, Ex. L at No. 18).

Word's EEOC Charge also indicates that the only accommodation requested was

"to be moved to a less stressful team."  (EEOC Charge dated June 4, 2009, Dkt. 1

at p. 10).

In her deposition, Word describes what she experienced while working for

Cureaka Coleman and that she made the request to several people that she be

moved to a different supervisor.  (Word Depo., Ex. A, p. 78 at line 19 through p.

84, line 13).

     During Word's deposition, the following exchange occurred:

Q.    If it hadn't been for Ms. Coleman's actions towards you, as you've described, would you have been able to perform the duties of your job in that time frame?
A.    Yes.

Q.    If you had a different supervisor you think you could have performed the duties of your job?
A.    Yes.

(Word Depo., Ex. A, p. 82 at lines 18 - 25 and p. 83 at line 1).

     Numerous courts have held that the fact that a plaintiff cannot work for a

particular supervisor does not constitute a disability under the ADA.  In Weiler v.

Household Finance Corp., 101 F.3d 519, 524 (7th Cir. 1996)., the Court held:

> Weiler's claim amounts to a charge that she is only unable to work if
> Skorupka is her boss.  Aside from the fact that this contradicts her
> psychotherapist's testimony, whatever Weiler's problem was with
> Skorupka, it is not recognized as a disability under the ADA.  The
> major life activity of working is not "substantially limited" if a
> plaintiff merely cannot work under a certain supervisor because of
> anxiety and stress related to his review of her job performance.  *See,
> e.g., Palmer v. Circuit Ct. of Cook Cty, Social Service Dep't*, 905
> F. Supp. 499, 507 (N.D. Ill. 1995) (evidence that plaintiff had a
> personality conflict with her supervisor which caused her to suffer
> anxiety and depression not a disability); *Adams v. Alderson*, 723
> F. Supp. 1531, 1531-32 (D.D.C. 1989) (personality conflict with an
> "antagonizing supervisor" not a disability under the ADA), *aff'd* 1990
> WL 45737 (D.C. Cir. 1990) (*per curiam*).

A similar result was reached in <u>McKenzie v. City and Cty. of Denver</u>, 414

F.3d 1266 (10th Cir. 2005).  In that case, the Court stated:

> McKenzie's entire disability claim focuses on the actions of her
> supervisor Gourley.  However, the major life activity of working
> cannot be "substantially impaired" if a plaintiff cannot work under a
> certain supervisor because of the stress and anxiety it causes.
> <u>Siemon v. AT&T Corp.</u>, 117 F.3d 1173, 1176 (10th Cir. 1997) (*citing
> Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524-25 (7th Cir.
> 1996)).

<u>McKenzie</u>, 414 F.3d at 1276.

Other cases reaching this same conclusion, include:

> <u>Aldrup v. Caldera</u>, 274 F.3d 282, 287 (5th Cir. 2001) (regarding
> plaintiff whose disability was caused by anxiety of working with
> certain employees, the court held claim "would merely tend to show
> that he was unable to perform any job at one specific location, and is
> not evidence of [plaintiff's] general inability to perform a broad class
> of jobs"); *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1176 (10th Cir.
> 1997) (mental impairment that prevents plaintiff from working under
> a few supervisors within the organizational structure of one major
> corporation does not constitute a disability under the ADA); *Potter v.
> Xerox Corp.*, 88 F. Supp. 2d 109, 112-113 (W.D.N.Y. 2000) (inability
> to work under a certain supervisor does not rise to the level of a
> disability under the statutory definition).

The fact that Word believed she could not work under Cureaka Coleman and

desired a transfer to a different supervisor does not establish that Word is entitled

to protection under the ADA.  The only other potential accommodation mentioned

by Word is that Dr. Daw wanted to take her off of the phone.  (Word Depo., Ex.

A., p. 86 at lines 14 - 19).  However, it is undisputed that taking incoming phone

calls from customers is an essential function of the job of a Sales Associate since

Word herself testified that she was engaged in such activity "a hundred percent" of the time while she was at work.  (Word Depo., Ex. A, p. 86).

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendant respectfully requests that this Court grant Defendant's Motion for Summary Judgment and dismiss this matter, with prejudice.

This the 27th day of May, 2011.

/s/ Robert E. Thomas, Jr.
ROBERT E. THOMAS, JR.
Georgia Bar No.
North Carolina Bar No.
AT&T Southeast
Suite 4300
675 West Peachtree Street, NW
Atlanta, GA  30375-0001
(404) 927-3520
Fax (404) 927-7167
E-mail:  bt8053 @att.com

-and-

CHRIS MITCHELL
Alabama Bar No. ASB-6263-C65C
Maynard, Cooper & Gale, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203
(205) 254-1160
Fax (205) 254-1999
E-mail:  cmitchell@maynardcooper.com

ATTORNEYS FOR DEFENDANT

924029

- 31 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of May, 2011, I electronically filed the foregoing Defendant's Brief in Support of Motion for Summary Judgment with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day upon counsel for Plaintiff in the manner specified via transmission of the Notice of Electronic Filing generated by CM/ECF.


*/s/ Robert E. Thomas, Jr.*

ROBERT E. THOMAS, JR.

ATTORNEY FOR DEFENDANT

924029